152 So.2d 727 (1963)
Dennis Manaford WHITNEY, Petitioner,
v.
H.G. COCHRAN, Jr., as Director of the Division of Corrections, Respondent.
No. 31516.
Supreme Court of Florida.
April 19, 1963.
Rehearing Denied May 22, 1963.
*728 Charles A. Nugent, Jr., and Miller, Cone, Owen, Wagner & Nugent, West Palm Beach, for petitioner.
Richard W. Ervin, Atty. Gen., Reeves Bowen, Asst. Atty. Gen., Richard E. Gerstein, State Atty., and Roy Lee Jones, Asst. State Atty., for respondent.
THORNAL, Justice.
By a post conviction petition for a writ of habeas corpus Whitney assaults a conviction for first degree murder because of an alleged denial of due process at his trial.
We are called upon to consider the petitioner's claims that his conviction and sentence to death were infected by fatal deprivations of organic rights.
On June 30, 1960, petitioner was adjudged guilty of first degree murder pursuant to a jury verdict without recommendation of mercy. On that date he was sentenced to death. This Court affirmed the judgment on Appeal. Whitney v. State, Fla., 132 So.2d 599. The cited opinion recites the significant facts which were developed at the trial. Dennis Whitney, a seventeen year old youth, murdered one Arthur Keeler while in the act of robbing a filling station. He had previously been convicted of another murder for which he had received a life sentence. To represent him in the instant case the trial judge appointed two well-reputed lawyers who had acquired extensive experience in criminal practice. Both had served as assistant attorneys general. One had served as a municipal judge of the City of Miami. The other had served as assistant state attorney of Dade County and had prosecuted several hundred homicide cases. It is obvious that the trial judge carefully selected the defense lawyers. The assignment was far from perfunctory. These lawyers were obviously no mere dilettantes in the handling of criminal cases. It became clear from their investigations that Whitney was guilty of the *729 crime. His only hope, in their view, and apparently his, was to plan the trial tactics in a fashion that would most likely lead to a recommendation of mercy. The foreboding death sentence would be avoided thereby. Admittedly, there was little hope for an acquittal.
After extensive negotiations with the state attorney and after numerous conferences with Whitney and his two sisters who had come to his assistance, the attorneys prepared a stipulation setting forth the essential but unembellished facts of the homicide. After being fully informed of the possibilities, the accused signed the stipulation. His sisters also signed it to indicate their approval. As we have stated, the hoped-for mercy recommendation did not result. On April 18, 1962, Whitney filed the instant petition for writ of habeas corpus. He claims a deprivation of due process with a contention that he was induced to sign the stipulation on the assurance of his attorney that in so doing he would escape the electric chair; he asserts that he was not consulted during the appeal of his conviction to this Court; relying upon the constitutional guarantee of a right to confront the witnesses against him and to cross-examine them, he asserts that the stipulation denied him the benefit of this constitutional privilege; he now contends that under the circumstances alleged, the stipulation was, in effect, a compulsion to testify against himself. As he did on his appeal, the petitioner again claims that Section 782.04, Florida Statutes, F.S.A., is unconstitutional because it does not limit the class or age group of persons subject to the penalty for violation of its provisions.
Because of the seriousness of the charges and the severity of the impending punishment, the respondent recommended that the writ be issued and a return required. This we did. Honorable Lamar Warren, one of the judges of the Fifteenth Judicial Circuit was appointed a commissioner of this Court to receive the evidence and to submit his findings and recommendations to us. This is our established practice in post conviction proceedings when there are factual issues requiring evidentiary support. Cf. Cash v. Culver, Fla., 120 So.2d 590. Judge Warren has faithfully followed the instructions contained in the order of his appointment. He patiently, and with abounding fairness, heard all of the testimony offered in this proceeding. He meticulously extended to the petitioner broad latitude in the submission of testimony and the cross examination of opposing witnesses. The Court's commissioner has submitted a comprehensive review of the evidence. He has found against the petitioner on all of the claims asserted by him in his petition. He recommends that the petitioner be remanded to custody.
We have examined in detail the transcript of testimony offered before the commissioner. We are impelled to the conclusion that his findings are well grounded in the record and that his ultimate recommendation is fully justified.
It is perfectly clear from the evidence offered in this proceeding, as well as from the record of the original trial, that the critical stipulation was executed only after a thorough and conscientious consideration of what appeared to be the best interests of the petitioner. It obviously was the plan of the petitioner, his family and his attorneys, to forestall the introduction of a mass of damning evidence describing the gruesome details of the murder, and thereby remove such adverse influences from the jury's deliberations when it reached the question of recommending mercy. We do not find in the record any evidentiary support for the assertion that the lawyers guaranteed or could guarantee leniency. Under Florida law this is solely within the province of the jury where, as here, trial is had before a jury. Section 919.23(2), Florida Statutes, F.S.A. Leniency in the form of a mercy recommendation was the fervent hope of the petitioner and his *730 counsel. Their hopes were evidently decimated by the clear showing of murder, portrayed even by the bare facts uncolored by pictures and other condemning evidence. The most that can be said regarding the stipulation is that it was simply a tactical maneuver joined in by the petitioner and his family with full knowledge of the risk assumed. There is no contention that either the judge or the prosecuting officers committed the state to any promise of leniency. The record is devoid of any evidence that petitioner's counsel failed to act in good faith or that they acted in collusion with the state or from any unfaithful motive. Even an obvious tactical blunder, and we do not hold that one was demonstrated here, will seldom support a post conviction assault on a judgment of guilt. Unless such an error makes of the trial and the administration of justice a farce or a mockery a conviction will not be disturbed. The record here is devoid of any sufficient showing in this regard. United States v. Malfetti, D.C., 125 F. Supp. 27, affirmed 213 F.2d 728; United States v. Sobell, D.C., 142 F. Supp. 515, affirmed 244 F.2d 520, cert. den. 355 U.S. 873, 78 S.Ct. 120, 2 L.Ed.2d 77; Alexander v. United States, 5 Cir., 290 F.2d 252; Snell v. State, 158 Fla. 431, 28 So.2d 863, cert. den. 331 U.S. 830, 67 S.Ct. 1352, 91 L.Ed. 1844; McCall v. State, 136 Fla. 317, 186 So. 510.
There can be no doubt that an accused can knowingly waive constitutional guarantees of confrontation, cross examination, and protection against self-incrimination. The original trial record and the testimony before the commissioner certainly reveal that the petitioner knowingly and with full advice by able counsel elected to sacrifice some measure of constitutional protection in the hope of thereby obtaining the benefit of a more lenient jury verdict. In the instant matter there was a knowing and understanding waiver of these constitutional privileges after full advice. Jennings v. Illinois, 342 U.S. 104, 72 S.Ct. 123, 96 L.Ed. 119; Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834, 839; Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83; State ex rel. Gayle v. Dowling, 91 Fla. 236, 107 So. 267. Under the circumstances reflected by this record it was unnecessary to present the stipulation to the trial judge before it was signed.
Contrary to petitioner's contention, the record is replete with evidence that he was fully informed of the handling of his case during the original appeal. In fact, during this period and subsequent to the affirming decision of this Court, the petitioner by letters to his lawyers reaffirmed his confidence in their handling of the matter. He repeated his continued satisfaction with the procedure that had been followed.
Section 782.04, Florida Statutes, F.S.A., defines murder. We have been referred to no case which requires that a homicide statute classify potential offenders according to age. Maturity sufficient to form the required intent or premeditated design to commit the crime is all that is essential.
After all is said the record in this proceeding simply reveals the case of a totally wanton and unjustifiable murder. A thorough consideration of the matter leads us to conclude that the allegations of the petition have not been sustained; that in the original trial and in this proceeding the petitioner has been accorded a full measure of due process. The writ is discharged and the petitioner is remanded to custody, subject to the original judgment and sentence.
It is so ordered.
ROBERTS, C.J., and DREW, O'CONNELL and CALDWELL, JJ., concur.